UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY LIDDELL,<br><br>        Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>        Defendant. | Case No. CV 17-2703-JPR<br><br>**MEMORANDUM DECISION AND ORDER REVERSING COMMISSIONER** |

**I. PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying his application for Social Security disability insurance benefits ("DIB"). The parties consented to the jurisdiction of the undersigned under 28 U.S.C. § 636(c). The matter is before the Court on the parties' Joint Stipulation, filed December 5, 2017, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is reversed and this action is remanded for further proceedings.

**II. BACKGROUND**

Plaintiff was born in 1951. (Administrative Record ("AR") 90, 101.) He completed 12th grade (AR 89, 199, 310) and last worked as a security guard (AR 48-49, 199, 205).

On September 25, 2013, Plaintiff applied for DIB, alleging that he had been disabled since August 15, 2008, because of bipolar disorder, arthralgia, a left-shoulder injury, hepatitis B, dermatitis, hyperlipidemia, and lymphadenopathy.[1] (AR 90, 101-02.) After his application was denied initially and on reconsideration (AR 89, 100, 110, 112), he requested a hearing before an Administrative Law Judge (AR 127-28). A hearing was held on June 18, 2015, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. (AR 41-68, 119.) In a written decision issued August 25, 2015, the ALJ found Plaintiff not disabled because his "substance abuse disorder [was] a contributing factor material to the determination of disability." (AR 20-40.) Plaintiff requested review from the

---

[1] The ALJ denied Plaintiff's earlier applications for DIB and SSI, which had alleged an onset date of November 10, 2008, on December 13, 2010 (AR 72-87); the decision was apparently not appealed and became final (see AR 20). His current application alleged a new onset date of August 15, 2008 (see AR 90), and his date last insured was September 30, 2013 (see AR 24). Thus, the relevant periods for the ALJ to adjudicate were August 15 to November 10, 2008, and December 13, 2010, through September 30, 2013. The ALJ found that Plaintiff had not demonstrated changed circumstances since that prior decision for either unadjudicated period (AR 24-25) and thus had not rebutted the presumption of nondisability (AR 36). See Lester v. Chater, 81 F.3d 821, 827-28 (9th Cir. 1995) (as amended Apr. 9, 1996) (citing Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988), as holding that certain changed circumstances preclude application of res judicata). Plaintiff challenges the finding only as to the second unadjudicated period. (See generally J. Stip.)

Appeals Council (AR 15), and on February 14, 2017, it denied review (AR 1-6). This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV. THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C.

§ 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A. The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, the claimant is not disabled and his claim must be denied. § 404.1520(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. § 404.1520(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant

has sufficient residual functional capacity ("RFC")[2] to perform his past work; if so, he is not disabled and the claim must be denied. § 404.1520(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. § 404.1520(a)(4)(v); Drouin, 966 F.2d at 1257. That determination comprises the fifth and final step in the sequential analysis. § 404.1520(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

A claimant whose alcoholism or drug addiction is a contributing factor material to the determination of disability is not entitled to Social Security disability benefits. See 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."); see also 20 C.F.R. § 404.1535(a) (same);[3] Ball v. Massanari, 254

---

[2] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 404.1545; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). The Commissioner assesses the claimant's RFC between steps three and four. Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing § 416.920(a)(4)).

[3] Section 404.1535(b)(1) further provides that "[t]he key factor we will examine in determining whether drug addiction or

5

F.3d 817, 824 (9th Cir. 2001). When the claimant has a history of drug or alcohol abuse, the five-step sequential evaluation must first be conducted "without separating out the impact of alcoholism or drug addiction." Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001); see also Parra, 481 F.3d at 747-48. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under § 404.1535. If, however, the ALJ concludes that the claimant is disabled and medical evidence exists of drug addiction or alcoholism, then he must analyze whether the claimant would still be disabled if he stopped using alcohol or drugs. Bustamante, 262 F.3d at 955 (citing § 404.1535); Parra, 481 F.3d at 747. The claimant bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination. Ball, 254 F.3d at 822-23; see also Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998) (remanding to give claimant opportunity to present evidence relevant to issue).

B. The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between August 15, 2008, the alleged disability-onset date, and September 30, 2013, his date last insured. (AR 24-25.) At step two, he concluded that he had the following severe impairments: "polysubstance abuse, alcohol dependency, and mood disorder, not otherwise specified." (AR

---

alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol."

6

25.)[4]  At step three, the ALJ determined that Plaintiff's impairments, "including the substance use disorders," met "section 12.09 (with reference to section 12.04)" (AR 28) but that if Plaintiff stopped the substance use he "would not have a severe impairment or combination of impairments" (AR 31). Thus, the ALJ found that Plaintiff's substance use was a contributing factor material to the determination of disability under § 404.1535. (AR 35.) Because the ALJ initially found Plaintiff disabled at step three, he did not reach steps four or five.

---

[4] Plaintiff thus rebutted the presumption of continuing nondisability by presenting a changed circumstance, a severe mood disorder, and the ALJ erred in finding otherwise. (See AR 25-28, 75-78); Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988); Lester, 81 F.3d at 827. The error was likely harmless, however. See Cha Yang v. Comm'r of Soc. Sec. Admin., 488 F. App'x 203, 204 (9th Cir. 2012) (finding that ALJ's misapplication of Chavez was harmless because ALJ considered plaintiff's medical evidence in formulating RFC). The ALJ in fact reviewed the medical evidence from after Plaintiff's December 2010 decision and used that evidence to determine the severity of his impairments (AR 25-28), whether those impairments met a listing "including the substance use disorders" (AR 28-30), and whether any remaining limitations would cause "more than a minimal impact on [his] ability to perform basic work activities" if he stopped his substance abuse (AR 31-35). Accordingly, his stated reliance on the Chavez presumption was harmless. See Cha Yang, 488 F. App'x at 204; Gutierrez v. Colvin, No. CV 15-01584 FFM, 2016 WL 5402941, at *5 (C.D. Cal. Sept. 26, 2016) (finding that Plaintiff established changed circumstances and that ALJ's stated application of "continuing non-disability theory pursuant to Chavez" was harmless error because "ALJ went on to review and assess plaintiff's" medical records from after prior ALJ decision); McGlothen v. Colvin, No. 2:15-cv-204-GJS, 2015 WL 5706186, at *3 (C.D. Cal. Sept. 29, 2015) (finding that ALJ's "invocation of res judicata" was harmless error because "ALJ proceeded with a review of the medical evidence — a review that approximated the traditional five-step approach").

**V. DISCUSSION**

Plaintiff argues that the ALJ erred in failing to find changed circumstances overcoming the presumption of continuing nondisability from his prior decision (J. Stip. at 3-7, 9-11), failing to consider the "paragraph C" criteria as to Listing 12.04 (id. at 11-14), and rejecting his subjective symptom testimony (id. at 14-17). Because the ALJ materially erred in the third regard, the case is remanded for further proceedings and the Court does not reach Plaintiff's contention regarding paragraph C. As previously discussed, any error concerning the presumption of continuing nondisability was harmless.

    A.    <u>The ALJ Erred in Discounting Plaintiff's Subjective Symptoms</u>

        1.    <u>Applicable law</u>

An ALJ's assessment of a claimant's allegations concerning the severity of his symptoms is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (as amended); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985) (as amended Feb. 24, 1986). "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. See Lingenfelter, 504 F.3d

at 1035-36; see also SSR 96-7p, 1996 WL 374186 (July 2, 1996).[5]
"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter, 504 F.3d at 1036. If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original).

If the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as

---

[5] Social Security Ruling 16-3p, 2016 WL 1119029, effective March 16, 2016, rescinded SSR 96-7p, which provided the framework for assessing the credibility of a claimant's statements. SSR 16-3p was not in effect at the time of the ALJ's decision in this case, however, and therefore does not apply. Still, the Ninth Circuit has clarified:

> [SSR 16-3p] makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended) (alterations in original) (quoting SSR 16-3p).

amended); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014). In assessing credibility, the ALJ may consider, among other factors, (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties. Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (as amended); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the ALJ's finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas, 278 F.3d at 959.

### 2. Relevant background

Plaintiff has a history of a variety of mental-health diagnoses, including bipolar disorder, mood disorder, psychosis, personality disorder, and alcohol and cocaine dependence. (See AR 333-36; see also AR 272-73, 302-03, 306, 508, 514, 532, 585, 613, 795.) He received psychiatric treatment and clinical group therapy for those conditions through the U.S. Department of Veterans Affairs. (See generally AR 272-352, 395-635, 641-1156.)

Plaintiff attended therapy through a VA Addictive Behaviors Clinic as early as June 2013. (See AR 351.) To participate in the clinic, he was required to comply with breathalyzer tests every other week (see AR 55, 348-49) and provide urine samples once a week for toxicology testing (see AR 56, 321, 323-24, 341-

10

42, 349). He attended group-therapy sessions on topics such as stress management (see AR 320, 324, 348), co-occurring disorders (see AR 322, 324-25, 328, 331-32, 351), nutrition and health education (see AR 319-21, 323), relapse prevention (see AR 322, 346), recovery concepts (see AR 350), and anxiety management (see AR 326, 351-52). He also received individual psychological treatment. (See, e.g., AR 332-39, 347.)

In August 2013, Plaintiff was invited to begin a 30-day trial period at the VA Psychosocial Rehabilitation and Recovery Center because the results of his psychological testing showed that he might "benefit from the structure and support available within the PRRC program." (AR 327-29.) PRRC offered "additional support regarding medication management; psycho[logical] education regarding the nature of his mental health conditions to increase awareness of symptoms and relapse prevention; and increased social support and social skills training with other Veterans." (AR 328.) Plaintiff did not complete his 30-day trial and become an "active member" of the PRRC until January 31, 2014, however, after the relevant period. (AR 508, 535-36.)

Plaintiff lived in VA Supportive Housing during the relevant period.[6] (See AR 934 (stating that Plaintiff was admitted to VASH on Aug. 3, 2011).) The VASH program required regular home

---

[6] VASH serves "chronically homeless" veterans, who often have "severe mental or physical health problems and/or substance use disorders." See HUD-VASH Eligibility Criteria, U.S. Dep't of Veterans Affairs, https://www.va.gov/homeless/hud-vash_eligibility.asp (last visited May 17, 2018). A "key component" of the program is case-management services that are designed to engage veterans "in needed treatment and other supportive services." Id.

11

visits and check-ins. (See, e.g., AR 330, 408.) He was "discharged from VASH case management into [VASH] aftercare" on September 30, 2014, but "remain[ed] housed" in the VASH community and "continue[d] involvement" in mental-health treatment. (AR 330, 934-36.)

Plaintiff testified that he "ha[d] a problem relapsing" by drinking alcohol but that he "ha[dn't] used any drugs" since his prior decision. (AR 56-57.) When asked about VA records showing that he tested "positive for opiates a couple of times in 2013," he stated that he "was on [pain] medication" at those times, not using illicit drugs. (AR 60.)

### 3. Analysis

The ALJ found that Plaintiff's "statements regarding substance abuse [were] not credible" because he "testified that he ha[d] abstained from alcohol use since the prior adjudicated period" but "ha[d] admitted [in the record] to periods of relapse during the current unadjudicated period." (AR 30.) The ALJ further found that "the fact that he continue[d] to drink alcohol in spite of his program requirements and personal goals" of complete abstinence "suggest[ed] that [his] assertion that his substance dependence [was] in remission [was] not credible." (Id.) Plaintiff argues that those reasons for discounting his subjective symptom statements were "entirely unsupported by the record." (J. Stip. at 15.) He is correct.

Inconsistent statements "regarding . . . drinking" are a "clear and convincing reason[]" to reject a plaintiff's testimony. Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999); Thomas, 278 F.3d at 959. "[L]ack of candor carries over"

12

to other relevant issues and "supports [an] ALJ's negative conclusions about [a plaintiff's] veracity." Thomas, 278 F.3d at 959. Here, however, the supposed inconsistencies that the ALJ cited are not reflected in the record. His finding that Plaintiff "testified that he ha[d] abstained from alcohol use since the prior adjudicated period" is inaccurate. (See AR 30.) At Plaintiff's hearing, when asked by the ALJ whether he was "still drinking alcohol," he answered that he had "relapsed a month ago." (AR 54.) Although at two points he answered the ALJ's followup questions about whether he "w[as] drinking" with "[n]ot really" and "[n]o" (AR 55-56), he then clarified that he "ha[d] a problem relapsing" (AR 56) and admitted to relapses in May 2015, January 2015, and May 2014 (AR 54-57). At no time did he claim to have completely "abstained from alcohol use" since his prior decision, as stated by the ALJ. (See AR 30.) Indeed, elsewhere in his decision the ALJ acknowledged Plaintiff's candor on this issue, writing that he "testified that he has periodic relapses." (AR 26.)

The ALJ further noted that Plaintiff "may also have used drugs, since drug tests were positive for opiate use in January, April and November 2013." (AR 30; see AR 27.) In fact, Plaintiff tested positive for opioid use in March and June 2013 in addition to the instances cited by the ALJ. (AR 374-76.) But Plaintiff testified that those positive findings were attributable to prescribed pain medications (AR 60), and the record supports that assertion for at least two of the positive tests. In January 2013, he was hospitalized for a urinary obstruction causing renal failure. (AR 302-03.) Upon discharge,

he was prescribed hydrocodone-acetaminophen[7] "as needed for severe pain." (AR 304-05.) In November 2013, he was prescribed Vicodin[8] "for breakthrough [pain]" from a tooth "needing extraction." (AR 545.) It is unclear whether those prescriptions were refillable or how long Plaintiff's medical conditions continued and thus whether that could explain the remaining positive tests. But Plaintiff's evidence supports at least an inference that the positive tests resulted from his legitimate use of prescribed opiate pain-relieving medication, particularly in light of his consistently negative test results for all other drug use.[9] (See AR 371-77.)

Finally, the ALJ found that Plaintiff's failure to meet his personal goals and the program's requirements of complete abstinence from alcohol "suggest[ed] that [his] assertion that his substance dependence [was] in remission [was] not credible." (AR 30 (citing AR 535).) But Plaintiff's testimony about his general substance-abuse remission was bolstered by the record. His clinic treatment records from the relevant period regularly noted "how well he [was] compl[y]ing [with] the clinic rules in

---

[7] Hydrocodone-acetaminophen is an opioid pain medication used to relieve moderate to severe pain. See Hydrocodone-Acetaminophen, WebMD, https://www.webmd.com/drugs/2/drug-251/hydrocodone-acetaminophen-oral/details (last visited May 17, 2018).

[8] Vicodin is an opioid pain reliever used to relieve moderate to severe pain. See Vicodin, WebMD, https://www.webmd.com/drugs/2/drug-3459/vicodin-oral/details (last visited May 17, 2018).

[9] On remand, the ALJ can develop the record to determine the circumstances of the unexplained periods when Plaintiff tested positive for opiates.

14

providing a urine sample for testing" (AR 321, 323-24, 341-42, 349), and each of his urine toxicology tests from that time were negative for cocaine and cannabis (AR 371-77). Regarding his alcohol use and goals, the ALJ cites and relies on Plaintiff's PRRC treatment, but he did not enroll in PRRC or adopt its goals until after the relevant period. (See AR 535 (completing 30-day trial on January 31, 2014), 620 (reporting in November 2013, before beginning PRRC, that "in the past year" he drank "[f]our or more times a week").)

And though Plaintiff relapsed at times even after beginning the program and despite "his long-term goal [of] sobriety" (see AR 535), those occurrences more reflect his struggle to get sober than show a "lack of candor" in the information he presented to the ALJ. Cf. Thomas, 278 F.3d at 959 (plaintiff had not "been a reliable historian, presenting conflicting information about her drug and alcohol usage"). This is particularly so given that Plaintiff acknowledged his relapses to his VA care providers. (See, e.g., AR 585 (Jan. 2014: reporting that he "still struggle[d] with periodic alcohol use lapses, most recently drinking 3 beers on Monday of [that] week"), 777 (Feb. 2015: reporting that he had been "'up and down' with alcohol use" and "last consumed alcohol on Super Bowl Sunday")); cf. Guerrera v. Colvin, No. CV-13-01354-TUC-BPV, 2015 WL 875378, at *8-9 (D. Ariz. Mar. 2, 2015) (affirming ALJ's credibility finding when Plaintiff made contradictory statements, reporting sustained sobriety to his treatment providers but testifying at hearing to marijuana use during same time period); Frazier v. Berryhill, No. 2:16-cv-01808 TLN CKD, 2017 WL 6017139, at *8 (E.D. Cal. Dec. 5,

15

2017) (holding that plaintiff's "less than candid statements about her drug use" was "valid reason[] for discounting [her] subjective complaints").

Thus, Plaintiff's statements about his substance abuse did not present a "dramatic inconsistenc[y]" amounting to a clear and convincing reason to discount them. See Bechelli-Gonzalez v. Comm'r of Soc. Sec. Admin., No. 16-cv-07284-MEJ, 2018 WL 1014610, at *6 (N.D. Cal. Feb. 22, 2018) (holding that plaintiff's "misstating the date of her last drink by one month [was] not a clear and convincing reason" "[c]ompared to the dramatic inconsistencies at issue in Verduzco," in which plaintiff's statements to different sources varied between "drink[ing] an average of 24 bottles of beer a day" and "not abus[ing] alcohol or [being] in remission").

Accordingly, the ALJ failed to provide a clear and convincing reason for finding Plaintiff's statements regarding substance abuse "not credible." See Brown-Hunter, 806 F.3d at 493; Treichler, 775 F.3d at 1102.

B.  Remand for Further Proceedings Is Appropriate

Plaintiff requests that the Court "credit evidence that was rejected" and order an "immediate award of benefits." (J. Stip. at 17-18.)  When, as here, an ALJ errs, the Court "ordinarily must remand . . . for further proceedings." Leon v. Berryhill, 880 F.3d 1041, 1045 (9th Cir. 2017) (as amended Jan. 25, 2018) (explaining that "a direct award of benefits was intended as a rare and prophylactic exception to the ordinary remand rule"); see also Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended).  "[T]he decision of whether to remand for further

16

proceedings turns upon the likely utility of such proceedings." <u>Harman</u>, 211 F.3d at 1179; <u>see also</u> <u>Garrison v. Colvin</u>, 759 F.3d 995, 1019-20 (9th Cir. 2014).

Here, given Plaintiff's continued alcohol and drug use and the possibility that the ALJ might have been correct that his symptoms would subside sufficiently to render him not disabled if he stopped substance use altogether, remand is warranted. <u>See</u> <u>Garrison</u>, 759 F.3d at 1021 (Court has "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act"). On remand, the ALJ must reconsider his evaluation of Plaintiff's statements regarding substance abuse. If he again discounts them, he can provide an adequate reason for doing so. The ALJ may also expressly consider paragraph C of Listing 12.04. Thus, remand is appropriate. <u>See</u> <u>id.</u> at 1020 n.26.

**VI. CONCLUSION**

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g),[10] IT IS ORDERED that judgment be entered REVERSING the Commissioner's decision, GRANTING Plaintiff's request for remand, and REMANDING this action for further

---

[10] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

17

proceedings consistent with this memorandum decision.

DATED: May 18, 2018       _____
                          JEAN ROSENBLUTH
                          U.S. Magistrate Judge